UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

PETER WOLFINGER,

                  Plaintiff,

      -against-

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC.,

                Defendant.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-1710 (NGG) (PK)**
**17-CV-3099 (NGG) (PK)**

NICHOLAS G. GARAUFIS, United States District Judge.

On or around May 6, 2016, Plaintiff Peter Wolfinger was fired from his job of over

sixteen years as a general utility worker and mechanic for Defendant Consolidated Edison

Company of New York, Inc. ("Con Ed" or "Defendant"). (Am. Compl. ("Am. Pet.") (Dkt. 8 in

No. 17-CV-1710) ¶¶ 18, 23.)[1] Plaintiff, through his union, the Utility Workers Union of

America, AFL-CIO, Local 1-2 (the "Union"), filed a grievance in response to his termination.

(See id. ¶ 17.) On January 26, 2017, Arbitrator Marlene A. Gold ("Arbitrator Gold") upheld

Plaintiff's termination, finding that Defendant had reasonable cause to discharge him. (See id.

¶ 2.)

Plaintiff now seeks vacatur of Arbitrator Gold's opinion and award (the "Award")

pursuant to Article 75 of the New York Civil Practice Law and Rules, N.Y. C.P.L.R. 7511, and

Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a)

[hereinafter LMRA § 301(a)]. (See Am. Pet.; Pl. Mem. in Opp'n to. Mot. to Dismiss ("Pl.

Opp'n") (Dkt. 18) at 1.) Plaintiff also alleges disability and sex discrimination in violation of

various federal, state, and local laws. (Compl. ("Discrim. Compl.") (Dkt. 1 in No. 17-CV-3099)

---

[1] Unless otherwise noted, all record citations in this memorandum and order refer to documents in No. 17-CV-1710.

¶¶ 33-41.) Before the court is Defendant's motion to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss (Dkt. 14); see Mem. in Supp. of Mot. to Dismiss ("Def. Mem.") (Dkt. 15); Pl. Opp'n; Def. Reply in Supp. of Mot. to Dismiss ("Def. Reply") (Dkt. 19).) For the following reasons, Defendant's motion is GRANTED.

## I.   BACKGROUND

### A.   Facts

For the purpose of considering Defendant's motion to dismiss, the court accepts as true the factual allegations in Plaintiff's complaints and the exhibits attached thereto.[2] See, e.g., Galper v. JP Morgan Chase Bank, N.A., 802 F.3d 437, 443 (2d Cir. 2015); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").

Plaintiff, now a 46-year-old man, began working for Con Ed as a general utility worker on or about May 19, 2000. (Am. Pet. ¶ 18.) Plaintiff's job responsibilities included "trying to establish electricity in the area of lower Manhattan after the [September 11, 2001,] attacks" and "uninstalling underground cables as well as laying new cables on top of the street or around the debris pile at [G]round [Z]ero." (Discrim. Compl. ¶¶ 13-14.) Plaintiff claims that over the course of his sixteen years of employment for Con Ed he proved himself to be an "effective," "hard-working, dependable[,] and capable employee." (Am. Pet. ¶ 19; Discrim. Compl. ¶ 1.)

---

[2] Plaintiff attached two exhibits to his original complaint (the "Verified Petition"): "the Arbitrator's Opinion and Award dated January 26, 2017," and "the Administrative Decision from the State of New York- Workers' Compensation Board awarding Petitioner Workers['] Compensation Disability Benefits." (Verified Pet. (Dkt. 1 at ECF p.8) ¶¶ 5-6.) Although these exhibits were attached to the Verified Petition but not reattached to the Amended Petition, the court considers their attachment to the Verified Petition to have survived Plaintiff's amendment because the Amended Petition explicitly refers to the same exhibits. (See Am. Pet. ¶¶ 7-8.) The Amended Petition also refers to "the relevant portions of the Collective Bargaining Agreement between Defendant and [the Union]" (id. ¶ 9) but Plaintiff seems not to have submitted this exhibit.

2

During his work at Ground Zero, Plaintiff alleges that he was "exposed to significant levels of dangerous dust and other airborne debris that have been shown to cause cancer as well as other serious health issues." (Discrim Compl. ¶ 14.) He also claims that "his equipment was substandard and ultimately proved useless in protecting [his] health." (Id. ¶ 15.) Consequently, he developed chronic bronchitis. (Id. ¶¶ 12, 16.) Although Plaintiff was "initially able to maintain a regular work schedule and perform his job duties," he "sporadically . . . needed to take days off when his illness flared up." (Id. ¶ 17.) He also "suffered a heart attack in 2010 due to work[-]related issues." (Id.) "[W]hen Plaintiff's health issues worsened, the World Trade Center organization asked [him] to visit a radiologist in regards [to] illnesses many people who worked at the site of the attacks were experiencing." (Id. ¶ 18.)

Plaintiff's attendance troubles began on February 21, 2013, when he received a written warning following "his second [occurrence of absence] in 2012 totaling 12 days of absence." (See Arbitration Op. & Award ("Award") (Dkt. 1 at ECF p.15) at 4.) At that time, he was "reminded that further non-FMLA absences [could] result in additional progressive discipline, which might include suspensions and/or termination." (Id.) On March 10, 2014, Plaintiff was given a "verbal warning for poor attendance based upon his accumulation of three non-FMLA absences totaling [six] days in 2013." (Id.) Again, Plaintiff was told that future non-FMLA absences could result in progressive discipline leading to termination. (Id.) A third interview followed on May 13, 2014, at which Plaintiff was given a verbal warning and told that he needed to make "immediate and sustained improvement in his attendance" or else risk "further discipline up to []and including termination." (Id.) On May 19, 2014, Plaintiff had a fourth interview stemming from "an [eight-]day sick absence beginning March 25, 2014[,] after exhaustion of eligible FMLA time." (Id.) He received another written warning and a three-day suspension.

3

(Id.) A fifth interview occurred on January 13, 2015, following Plaintiff's "non-FMLA qualified absence of three days in October 2014." (Id. at 5.) "By that time, [Plaintiff] had accumulated a total of 30 days of non-FMLA qualified absences within a 12-month period." (Id.) He was suspended for five days and given another written warning, which, like all the other warnings, cautioned him that his failure to make "immediate and sustained improvement in his attendance" would lead to further discipline, including termination. (Id.)

The final meeting prior to Plaintiff's termination took place on November 30, 2015. (Id.) In his complaints, Plaintiff does not discuss any of the meetings mentioned in the preceding paragraph; instead, he states that after he took "several sick days in 2015," his "supervisors became irritated" and they "scheduled a meeting with him to discuss the absences." (Discrim. Compl. ¶ 19.) At the November 30, 2015, meeting, Con Ed suspended Plaintiff for five days without pay. (Id. ¶ 29; Award at 5.) Plaintiff construes this meeting as having constituted a "final warning" (Am. Pet. ¶ 21), but states that he "was never alerted to the fact that he had been issued a final warning" (Discrim. Compl. ¶ 21; see Am. Pet. ¶ 21).

Following the November 30, 2015, meeting, Plaintiff had three separate periods of absence: a four-day period in February 2016, the first two days of which were FMLA qualified; a "non-FMLA absence of 20 days from mid-March to mid-April, which was approved by workers['] compensation"; and a five-day "non-FMLA qualified absence from May 2, 2016, through May 6, 2016." (Am. Pet. ¶ 22; Award at 6-7; see Admin. Decision, State of New York, Workers' Compensation Board (Dkt. 1 at ECF p.23).) Prior to the third period of absence, Plaintiff "submitted an Employee's Physical Progress Report" to Con Ed in which he informed Con Ed "that he would need to miss work [until May 9, 2016,] in order to properly [] treat his chronic bronchitis." (Discrim. Compl. ¶ 22.) A doctor at Con Ed's "Occupational Health

4

Department" treated Plaintiff "for respiratory issues" and advised Plaintiff that he could "return to full duty on May 9, 2016." (Id. ¶ 23.)

In early May 2016, following Plaintiff's last period of absence,[3] Con Ed "scheduled a meeting with Plaintiff to again discuss his absences." (Am. Pet. ¶ 23; Discrim. Compl. ¶ 24.) Con Ed informed Plaintiff that the November 30, 2015, meeting constituted a final warning to Plaintiff, and that Plaintiff's employment was terminated effective immediately. (Am. Pet. ¶ 23; Discrim. Compl. ¶ 24.) Plaintiff states that he is "unaware of other employees [who] were terminated under similar circumstances without suffering from a [d]isability." (Discrim. Compl. ¶ 25.) He additionally claims that there was "a female co-worker [who] had a worse attendance record than him and had not been suspended or disciplined other than being issued minor warnings." (Id. ¶ 29.) According to Plaintiff, "the only obvious differences" between his situation and those of others at Con Ed who had multiple absences but were not suspended or terminated were Plaintiff's "disability and gender." (Id. ¶ 32.)

Although Plaintiff's complaints are unclear as to what exactly happened next, eventually the Union filed a grievance on Plaintiff's behalf and a hearing was held on July 28, 2016, before Arbitrator Gold. (See Award at 1.) On January 26, 2017, Arbitrator Gold denied Plaintiff's grievance, finding that Con Ed "had reasonable cause to discharge [Plaintiff] for three absence frequencies following his placement on a Final Warning on November 30, [2015]." (Id. at 7-8.) Arbitrator Gold rejected Plaintiff's argument that, because the first two days in his first absence were FMLA qualified, Con Ed should have been required to consider the full absence as FMLA qualified. (Id. at 6-7.) She also found that the testimony of Plaintiff's supervisor "cast[] doubt"

---

[3] The complaints conflict as to the exact date of Plaintiff's termination. (Compare Am. Pet. ¶ 23 (May 6, 2016), with Discrim. Compl. ¶ 24 (May 19, 2016).) The Award, meanwhile, states that Plaintiff's discharge occurred on May 18, 2016. (See Award at 1.)

on Plaintiff's claim that his third period of absence was legitimate; and, even if it were legitimate, that Con Ed's "policy specifically provides that excessive absences, including those that are legitimate, may constitute cause for discipline." (Id. at 7.) In view of Plaintiff's "disciplinary history, [Con Ed's] use of progressive discipline, [Plaintiff's] placement on a Final Warning, and his subsequent absences thereafter," Arbitrator Gold found that Con Ed had reasonable cause to discharge Plaintiff. (Id.)

## B.     Procedural History

Plaintiff originally filed his petition (the "Verified Petition") in Kings County Supreme Court on March 3, 2017. (Verified Pet. (Dkt. 1 at ECF p.8).) The Verified Petition sought a judgment vacating the Award and reinstating Plaintiff with full back pay on the grounds that the Award "violates a strong public policy and is irrational." (See id. ¶¶ 23-24.) Defendant timely removed the action to this court on the ground that Section 301(a) of the LMRA gives federal courts original jurisdiction over all claims "requiring interpretation of [a] collective bargaining agreement." See 28 U.S.C. §§ 1331, 1441; see also LMRA § 301(a). (Notice of Removal (Dkt. 1 at ECF p.1).) At a pre-motion conference on April 27, 2017, Plaintiff stated his intention to file an amended complaint, which the court directed him to do by no later than May 30, 2017. (Apr. 27, 2017, Min. Entry.) Plaintiff also informed the court of his intention to file a separate discrimination lawsuit against Defendant. (Id.) On May 23, 2017, Plaintiff both amended the Verified Petition (see Am. Pet.) (the "Amended Petition") and filed his discrimination complaint (see Discrim. Compl.) (the "Discrimination Complaint"), the latter of which was reassigned to the undersigned on June 27, 2017.

The Amended Petition still seeks vacatur of the Award and Plaintiff's reinstatement with back pay. (Am. Pet. at 8.) That pleading was also amended to allege that the Union breached its

duty of fair representation by allegedly mishandling Plaintiff's arbitration. (Id. ¶ 33.)

Meanwhile, the Discrimination Complaint alleges disability and sex discrimination in violation

of various federal, state, and local laws (Discrim. Compl. ¶¶ 33-41), for which Plaintiff demands

monetary damages (id. at 9).

The court ordered a joint briefing schedule for Defendant's anticipated motion to dismiss

both complaints. (July 11, 2017, Order (Dkt. 10).) The motion was fully briefed and filed with

the court on November 3, 2017. Regarding the Amended Petition, Defendant argues that

Plaintiff lacks standing to bring this challenge, that he does not allege a sufficient basis to vacate

the Award, and that he has failed to plead the necessary elements for his "hybrid" claim against

Con Ed and the Union under LMRA § 301. (Def. Mem. at 9-22.) Regarding the Discrimination

Complaint, Defendant claims that Plaintiff has failed to establish the elements of a claim of

disability or sex discrimination under federal, state, or local law, under any of the theories raised

in the Discrimination Complaint. (Id. at 22-30.)

## II.  LEGAL STANDARD

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to

test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112-13

(2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Id.

When considering a motion to dismiss for failure to state a claim, the court must accept

as true all allegations of fact in the complaint and draw all reasonable inferences in favor of the

plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

## III.    DISCUSSION

### A.    Arbitration

Plaintiff seeks vacatur of the Award on the grounds that it violates public policy. (Am. Pet. ¶ 31.) Even if he is not able to directly challenge the Award, he argues that his claim may proceed as a "hybrid" claim under LMRA § 301 because the Union breached its duty of fair representation and Defendant breached its collective-bargaining agreement with Plaintiff (a "hybrid § 301/DFR claim"). (See Am. Pet. ¶¶ 15-17, 33.) Defendant first responds that Plaintiff cannot challenge the Award because he was not a party to the arbitration, and that, even if he did have standing, he has not alleged a sufficient basis to vacate the Award. (Def. Mem. at 9.) Defendant further states that Plaintiff's hybrid § 301/DFR claim is untimely and that Plaintiff has failed to plead that the Union breached its duty of fair representation or that Defendant breached the collective bargaining agreement. (Id. at 14.)

The court finds that Plaintiff does not have standing to bring a direct challenge to the award. The court also finds that Plaintiff has not stated a claim that the Union breached its duty of fair representation, a necessary predicate for his hybrid § 301/DFR claim. Accordingly the court GRANTS Defendant's motion to dismiss the Amended Petition.

8

1.    Direct Challenge to the Award

Pursuant to Article 75 of the CPLR, an application to vacate an arbitration award may only be made by a "party" to the arbitration. See C.P.L.R. 7511(b)(1). "An employee whose claims are arbitrated under a collective bargaining agreement between an employer and a union generally does not have standing under [Article 75 of the CPLR] to vacate the arbitration award, since that employee was not a party to the initial contract under which the arbitration proceeded." Nicholls v. Brookdale Univ. Hosp. & Med. Ctr., No. 05-CV-2566 (JBW), 2005 WL 1661093, at *5 (E.D.N.Y. July 14, 2005); accord, e.g., Wilson v. Bd. of Educ., 689 N.Y.S.2d 222, 223 (App. Div. 1999).

Plaintiff seeks vacatur of the Award pursuant to Article 75 of the New York Civil Practice Law and Rules ("CPLR"). (Am. Pet. ¶ 12.) Defendant is correct that Plaintiff does not have standing to proceed under this theory. (See Def. Mem. at 9.) Plaintiff was represented in arbitration proceedings by the Union, which initiated the grievance proceeding on his behalf. Defendant and the Union—not Plaintiff—were the parties to the arbitration, and only the Union has standing to seek vacatur of the Award. The court therefore rejects Plaintiff's direct challenge to the Award.

2.    Hybrid § 301/DFR Claim

Recognizing that the above rule "may leave an individual employee without recourse when a union breaches its duty of fair representation in an arbitration proceeding," an employee can bring a hybrid § 301/DFR claim to challenge an arbitration award when he would not otherwise have standing to do so. See Nicholls, 2005 WL 1661093, at *5. In order to succeed on such a claim, the employee must allege "both breach of the labor agreement by the employer and breach of the duty of fair representation by the union." Tucker v. Am. Bldg. Maint., 451 F.

Supp. 2d 591, 595 (S.D.N.Y. 2006) (citing Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 564 (1990)).

Plaintiff attempts to make such a claim, arguing that Defendant "breached the collective bargaining agreement by wrongfully discharging [him]," and that the Union breached its duty of fair representation by "fail[ing] to present any evidence of the fact that one of the absence frequencies Defendant was relying [on] in their decision to terminate [Plaintiff] was a period of time when [he] was out legally receiving workers' compensation disability benefits." (Am. Pet. ¶¶ 16-17.) Defendant argues that Plaintiff has no standing to bring the claim because he did not name the Union as a defendant or respondent; that Plaintiff has failed to meet his pleading burden on both counts; and that, in any event, his claim is untimely because the 90-day statute of limitations ran before he filed the Amended Petition. The court finds that Plaintiff does have standing to bring a hybrid § 301/DFR action but that, because he has not sufficiently pleaded that the Union breached its duty of fair representation, his claim cannot proceed.

> a.    *Standing*

Defendant first claims that Plaintiff lacks standing to bring a hybrid § 301/DFR claim because the Amended Petition does not "name the Union as a defendant or respondent." (Def. Mem. at 14.) This assertion is incorrect: "The employee may sue the employer, the union, or both in a hybrid § 301/fair representation claim . . . ." Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638, 227 F.3d 29, 33 (2d Cir. 2000). (See Pl. Opp'n at 9.) While Plaintiff must still allege that the Union breached its duty of fair representation and that Defendant breached the collective bargaining agreement, Plaintiff does not need to name both of them as defendants in this action.

*b.*    *Merits*

The statute of limitations is not a jurisdictional element, so the court can consider the merits of a case even if it has reason to suspect that the limitations period may have run prior to the filing of the operative complaint. See Nosair v. United States, 839 F. Supp. 2d 646, 650 (S.D.N.Y. 2012); see also Bechtel v. Competitive Techs., Inc., 448 F.3d 469, 479 n.1 (2d Cir. 2006) (Leval, J., concurring in the judgment) (stating that courts may "dismiss on the merits cases that come within [their] constitutional jurisdiction, notwithstanding doubts as to whether [they] have statutory jurisdiction"). Because Plaintiff has failed to allege that the Union breached its duty of fair representation in redressing his grievance against Defendant, the court dismisses the Amended Petition without reaching Defendant's limitations-period argument.

i.    The Union's Duty of Fair Representation

"It is well established that a union has 'a statutory duty fairly to represent all of the employees it represents, both in its collective bargaining and in its enforcement of the resulting collective bargaining agreement.'" Figueroa v. Foster, 864 F.3d 222, 229 (2d Cir. 2017) (alterations adopted) (quoting Vaca v. Sipes, 386 U.S. 171, 177 (1967)). "This duty derives 'from the union's statutory role as exclusive bargaining agent.'" Agosto v. Corr. Officers Benevolent Ass'n, 107 F. Supp. 2d 294, 303 (S.D.N.Y. 2000) (quoting Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 74 (1991)). To establish a breach of the duty of fair representation, a plaintiff must (1) "prove that the union's actions or inactions are either arbitrary, discriminatory, or in bad faith," and (2) "demonstrate a causal connection between the union's wrongful conduct and [the plaintiff's] injuries." Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d 703, 709 (2d Cir. 2010) (quotation marks omitted).

"A union's actions are 'arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.'" Id. (quoting O'Neill, 499 U.S. at 67); see Passante v. N.Y. State Nurses Ass'n, No. 10-CV-87, 2010 WL 2425953, at *3 (N.D.N.Y. June 11, 2010) (defining an arbitrary omission as one "that may have involved either no decision at all or a decision made in reckless disregard of [the plaintiff's] rights"). "[T]actical errors are insufficient to show" that the union acted arbitrarily; "even negligence on the union's part does not give rise to a breach." Vaughn, 604 F.3d at 709 (alteration adopted) (quotation marks omitted). While "there is no heightened pleading standard for a breach of the duty of fair representation cause of action," Thomas v. Little Flower for Rehab. & Nursing, 793 F. Supp. 2d 544, 549 (E.D.N.Y. 2011), a plaintiff bears an "enormous burden" in establishing that his union breached this duty, Nicholls, 2005 WL 1661093, at *7.

ii.   Application

The court agrees with Defendant that Plaintiff's allegations boil down to an assertion that the Union "failed to present certain evidence during the arbitration hearing," something which is "precisely the type of tactical decision and conduct during an arbitration" that cannot support a duty-of-fair-representation claim. (Def. Mem. at 17.) To see why this is the case, a comparison with other cases of this nature is instructive. For example, in Passante, the court found that the plaintiff had stated a claim where the union failed to notify the plaintiff of the grievance proceedings, "failed to conduct an appropriate investigation of her claims, and failed to offer any evidence at the hearings to show that [the employer] violated its policies, the collective bargaining agreement, and federal and state law." Id. (emphasis added). Similarly, in Thomas, the court denied the motion to dismiss where the plaintiff alleged that the union "failed or

refused to reply" to the plaintiff's inquiries as to whether her grievance had been submitted to arbitration. Thomas, 793 F. Supp. 2d at 549. Both of these cases featured a union which had undertaken a grossly deficient defense of its member, and which had been at loggerheads with its member for much of the grievance-arbitration proceeding. By contrast, the court in Guerrero v. Soft Drink & Brewery Workers Union, No. 15-CV-911 (GHW), 2016 WL 631296 (S.D.N.Y. Feb. 16, 2016), found that "the union's failure to call certain witnesses at the hearing, and the union's failure to allege or argue fraud against [the employer] for [the employee's] intentional misrepresentation to the shop steward," were inactionable "tactical missteps." Id. at *4 (internal quotation marks omitted). Similar behavior—failure to call a particular witness, failure to obtain certain documents—was also found to be insufficient to show a breach of the union's duty in Tucker. See 451 F. Supp. 2d at 596. Simply put, a breach of the duty of fair representation does not arise when the union and the represented party disagree about steps that the union could, or even should, have taken during grievance arbitration; something much more "egregious" is necessary. See id. (quoting Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43 (2d Cir. 1989)).

Plaintiff claims that the Union "failed to adequately represent [at the arbitration] that one of the absence frequencies was while Plaintiff was receiving workers' compensation benefits," and that the Union should have submitted Plaintiff's "workers' compensation disability award to refute [Defendant's] citing to this absence frequency." (Am. Pet. ¶¶ 5, 17, 33.) This conduct is much in line with Guerrero, where the court found that evidentiary choices in the course of grievance procedures are tactical decisions that cannot support a claim for breach of the duty of fair representation. Plaintiff attempts to distinguish Guerrero on the grounds that it concerned a failure to present certain witnesses, rather than evidence (Pl. Opp'n at 10-11), but the court is not convinced that this distinction is meaningful. Cf. Romero v. DHL Express, Inc., No. 12-CV-

1942 (LAK), 2013 WL 1311033, at *2 (S.D.N.Y. Apr. 2, 2013) (rejecting the plaintiff's claim

that the union breached its duty by not presenting certain evidence). Plaintiff's attempts to

distinguish Tucker are similarly unavailing. Even if that case did not concern the specific factual

allegations being made by Plaintiff, the court still sees quite a bit of overlap between a claim that

the union breached its duty by not calling a witness that might have vindicated the plaintiff (as in

Tucker), and a claim that the union breached its duty by not producing documents that might

have vindicated the plaintiff (as here). (See Pl. Opp'n at 11.) Plaintiff's argument that the

Union's conduct amounted to "a wholesale abrogation of representation" (id. at 10) is clearly

incorrect, and does a disservice to plaintiffs whose representations were so lacking.[4]

Plaintiff additionally argues that the Union acted arbitrarily because it "allowed, and

failed to prevent consideration of, a matter that would violate public policy." (Id. at 9.) Plaintiff

cites no authority establishing that the bar for arbitrariness or bad faith is lower when a union's

tactical decisions implicate a supposed public policy. (See id. at 9-11.) The court joins

Defendant in surmising that "Plaintiff cites no caselaw in support of this argument because none

exists." (Def. Reply at 8.) Leaving Plaintiff's lack of support for this argument aside, it would

make no sense to transform routine tactical decisions automatically into "irrational" actions "far

outside the wide range of reasonableness" simply because they relate to matters of public policy.

As Plaintiff points out, there already exists a procedure for vacating arbitration awards that

violate public policy. (See Pl. Opp'n at 4-5.) If an arbitrator's award actually violates public

---

[4] Additionally, the court is not convinced that the arguments that Plaintiff claims were arbitrarily omitted would
have made a difference in the outcome of his arbitration proceeding. The alleged evidence would have only been
relevant to one of the three absence frequencies that Plaintiff took following his "final warning" in November 2015.
Arbitrator Gold's finding that Con Ed had reasonable cause for Plaintiff's discharge, however, was based on all
three of these frequencies, as well as Plaintiff's "history." (See Award at 6.) She considered and rejected the
Union's argument that Con Ed should have been required to consider the first absence frequency as FMLA qualified
simply because the first two days were. (See id. at 6-7.) She also found that, even accepting "Plaintiff's argument
that the third frequency was "due to a legitimate illness," Con Ed would still have had grounds to terminate Plaintiff.
(Id. at 7.)

policy, the union may seek to vacate it; allowing the represented employee to seek to vacate the award because one of the union's tactical decisions had a tangential relationship to "public policy" would amount to an end run around the well-established standing requirements for these actions.[5] The court declines Plaintiff's invitation to apply his proposed rule.

*     *     *

Plaintiff's complaint is devoid of allegations demonstrating the Union's egregious behavior, or improper intent, purpose, or motive. Instead, the actions taken by the Union in the course of representing Plaintiff were tactical choices that cannot support a hybrid § 301/DFR claim. Plaintiff's claim therefore cannot proceed, and the court must dismiss the Amended Petition with prejudice.[6]

### B.     Discrimination Claims

The allegations in the Discrimination Complaint raise different legal questions from those in the Amended Petition. In the Discrimination Complaint, Plaintiff alleges that Defendant treated him unfavorably and eventually terminated him because of his chronic bronchitis and his sex. (Discrim. Compl. ¶¶ 2-3.) This conduct, he alleges, violated a variety of federal, state, and local employment-discrimination laws, including Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq.; the New York City Human Rights Law ("NYCHRL"), N.Y.C.

---

[5] The court's concern about the far-reaching effects of Plaintiff's proposed rule is particularly acute given that many aspects of collective bargaining implicate matters of public policy. Cf. Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31, 138 S. Ct. 2448, 2476-77 (2018).

[6] "Because a union's breach of the duty of fair representation 'is a prerequisite to consideration of the merits of plaintiff's claim against' an employer for breach of a collective bargaining agreement, courts presented with hybrid claims need not reach the question of whether the employer violated the agreement unless the union has acted arbitrarily, in bad faith, or discriminatorily." Acosta v. Potter, 410 F. Supp. 2d 298, 309 (S.D.N.Y. 2006) (quoting Young v. U.S. Postal Serv., 907 F.2d 305, 307 (2d Cir. 1990)). Because Plaintiff is unable to show that the Union breached its duty of good faith, the court declines to analyze the question of whether Con Ed breached its collective bargaining agreement with Plaintiff.

Admin. Code § 8-101 et seq.; and the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§ 12101 et seq. (Discrim. Compl. ¶ 4.) For the following reasons, the court GRANTS

Defendant's motion to dismiss the Discrimination Complaint.

    1.    <u>Title VII</u>

    *a.*    *Legal Standard*

Claims of discrimination under Title VII are governed by the familiar burden-shifting test

first established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973). See <u>Vega</u>

<u>v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 82-83 (2d Cir. 2015). In order for a plaintiff's

claim under this framework to succeed, he bears the burden of establishing a <u>prima facie</u> case of

discrimination at the outset of his case by showing that "(1) he belonged to a protected class; (2)

he was qualified for the position he held; (3) he suffered an adverse employment action; and (4)

that the adverse employment action occurred under circumstances giving rise to an inference of

discriminatory intent." <u>Tolbert v. Smith</u>, 790 F.3d 427, 435 (2d Cir. 2015) (quotation marks

omitted).

To survive a motion to dismiss, however, "a plaintiff is not required to plead a <u>prima</u>

<u>facie</u> case under <u>McDonnell Douglas</u>, at least as the test was originally formulated." <u>Vega</u>, 801

F.3d at 84; <u>see</u> <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 510 (2002). Instead, "to defeat a

motion to dismiss . . . in a Title VII discrimination case, a plaintiff must plausibly allege that (1)

the employer took adverse action against him, and (2) his race, color, religion, sex, or national

origin was a motivating factor in the employment decision." <u>Vega</u>, 801 F.3d at 86; <u>see</u> <u>Zarda v.</u>

<u>Altitude Express, Inc.</u>, 883 F.3d 100, 118 (2d Cir. 2018) (en banc) ("A plaintiff alleging

disparate treatment based on sex in violation of Title VII must show two things: (1) that he was

discriminated against with respect to his compensation, terms, conditions, or privileges of

employment, and (2) that the employer discriminated because of sex." (alterations adopted) (internal quotation marks omitted) (citing 42 U.S.C. § 2000-e(a)(1))). Facts necessary to support an allegation of discrimination under Title VII "need only give plausible support to a minimal inference of discriminatory motivation." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). Although seemingly confused about the distinction between the McDonnell Douglas requirements on a motion to dismiss and on summary judgment, Defendant claims that Plaintiff has not sufficiently pleaded at least minimal support for his claims of discriminatory animus. (See Def. Mem. at 23, 29-30.)

b.    Application

Plaintiff attempts to raise an inference of discrimination based upon disparate treatment: He alleges that Defendant fired him "for alleged violations of [Defendant's] attendance policy, while allowing female employees with the same or similar alleged violations to remain working." (Discrim. Compl. ¶ 40.) In support of this claim, he points to "a female co-worker [(referred to by Defendant as 'A.P.')] who [had] a worse attendance record" and less experience or seniority than Plaintiff, yet who was "rarely criticized or disciplined for her attendance issues." (Id. ¶¶ 29-30.) He also makes vague allegations of "female employees [being] treated more favorably than male employees when being disciplined and reprimanded for attendance policy violations." (Id. ¶ 3; see id. ¶ 31.) Defendant states that Plaintiff's claim is "fabricate[d]," and that Defendant "treated Plaintiff and A.P. similarly and in accordance with the very same progressive discipline policy." (Def. Mem. at 30.) The court agrees that Plaintiff's claim of sex discrimination is "vague, speculative, and conclusory" (Def. Reply at 12) and accordingly must be dismissed.

"An inference of discrimination can arise from circumstances including . . . the more favorable treatment of employees not in the protected group." Littlejohn, 795 F.3d at 312 (internal quotation marks omitted). However, "[a] plaintiff relying on disparate treatment evidence must show [he] was similarly situated in all material respects to the individuals with whom she seeks to compare [him]self." Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (quotation marks omitted). While "the law does not require detailed pleadings regarding the similarly situated comparators," Yang v. Dep't of Educ., No. 14-CV-7037 (SLT), 2016 WL 4028131, at *9 (E.D.N.Y. July 26, 2016), "the plaintiff must at least plead allegations from which it is plausible to conclude that the comparators are similarly situated," Offor v. Mercy Med. Ctr., 167 F. Supp. 3d 414, 431 (E.D.N.Y. 2016), aff'd in part, vacated in part on other grounds, 676 F. App'x 51 (2d Cir. 2017).

Plaintiff has failed to meet his pleading burden. The Discrimination Complaint provides no information as to whether he and A.P. "had similar job descriptions or responsibilities," Johnson v. Andy Frain Servs., Inc., 638 F. App'x 68, 70 (2d Cir. 2016), or whether A.P.'s alleged pattern of absences was "of comparable seriousness" to Plaintiff's, Opoku v. Brega, No. 15-CV-2213 (KMK), 2016 WL 5720807, at *2 (S.D.N.Y. Sept. 30, 2016). Without any information about Plaintiff's allegedly similarly situated comparator, the court is unable to find that Defendant engaged in a pattern of disparate treatment rising to the level of unlawful discrimination. Plaintiff's only response to this argument is to claim that he "is not required to prove anything to survive a motion to dismiss." (Pl. Opp'n at 16.) Plaintiff's assertion is correct, but misses the point: He need not proffer evidence proving anything about his alleged comparator; instead, his burden is to plead facts from which the court might plausibly conclude

that he was treated worse than a similarly situated co-worker on account of his sex. Without such facts, the court must dismiss his Title VII sex-discrimination claim.

   2.   The ADA

      a.   *Legal Standard*

The ADA prohibits "discrimination against 'a qualified individual on the basis of disability,'" <u>Dawson v. N.Y.C. Transit Auth.</u>, 624 F. App'x 763, 765-66 (2d Cir. 2015) (quoting 42 U.S.C. § 12112(a)), including by "1) taking an adverse employment action; [or] 2) refusing to make a reasonable accommodation that would enable the employee to perform the essential functions of her job," <u>Forman v. City of New York</u>, No. 14-CV-6282 (LTS), 2017 WL 1167334, at *4 (S.D.N.Y. Mar. 27, 2017) (citing 42 U.S.C. § 12112(b)(1)-(7)).

In order to state a claim for disability discrimination under the ADA, a plaintiff must plead—in relevant part—that, despite his disability, he "was otherwise qualified to perform the essential functions of the job <u>with or without</u> a reasonable accommodation," and that he "suffered an adverse employment action . . . because of [his] disability." <u>Dooley v. JetBlue Airways Corp.</u>, 636 F. App'x 16, 21 (2d Cir. 2015) (emphasis added) (quoting <u>Davis v. N.Y.C. Dep't of Educ.</u>, 804 F.3d 231, 235 (2d Cir. 2015) (per curiam)). Regarding the latter requirement, as with Title VII, the essential question is whether the claim gives "plausible support to a minimal inference of discriminatory motivation." <u>Id.</u> (quoting <u>Vega</u>, 801 F.3d at 84).

A plaintiff bringing an ADA failure-to-accommodate claim, meanwhile, must plead that he "could perform the essential functions of [his] job <u>with</u> reasonable accommodations, and [his] employer refused to make those accommodations." <u>Ray v. Weit</u>, 708 F. App'x 719, 721 (2d Cir.

2017) (emphasis added) (citing McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009)).

*b.*    *Application*

i.    Qualification

Defendant claims that Plaintiff's chronic absenteeism rendered him unqualified to perform the essential functions of his job, and thus that all of his claims under the ADA should be dismissed. (Def. Mem. at 23-24.) See Hooks v. N.Y.C. Transit Auth., No. 98-CV-6308 (HB), 1999 WL 33204508, at *2 (E.D.N.Y. Dec. 12, 1999). In support of this claim, Defendant submits a declaration regarding Plaintiff's attendance record (the "Allen Declaration"). (See Decl. of Kelly P. Allen (Dkt. 16).) Plaintiff does not dispute the statements in the Allen Declaration, but instead states that Defendant's argument is "predicated upon material extraneous to the pleadings" that "may not support a motion to dismiss." (Pl. Opp'n at 14.)

Plaintiff is correct that the Allen Declaration does not meet the requirements for consideration on a motion to dismiss. The Allen Declaration is a new document submitted by Defendant and contains facts that are not mentioned in the complaint. It would thus be impossible to argue that Plaintiff had notice of the document or that he relied on it in drafting his pleadings. Cf. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). In order to consider the information in the Allen Declaration at this juncture, the court would have to convert Defendant's motion to dismiss into a motion for summary judgment. While that is exactly what Defendant urges the court to do (see Def. Reply at 13 n.4), the court will not do so because Plaintiff has not been "given a reasonable opportunity to present all the material that is pertinent to the motion." Sahu v. Union Carbide Corp., 548 F.3d 59, 67 (2d Cir. 2008) (quoting Fed. R. Civ. P. 12(d)); see DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 61 (S.D.N.Y.

20

2010) (declining to convert a motion to dismiss into one for summary judgment "since discovery has not yet commenced").

Without considering the information contained in the Allen Declaration, the court cannot conclude that Plaintiff has not sufficiently pleaded that he was qualified for his position. Plaintiff alleges that he only took "several sick days in 2015," that his "work-related health issues were the cause of his attendance issues," and that the reason he missed work immediately prior to his termination related to his health issues. (Discrim. Compl. ¶¶ 19-24.) These allegations, if true, would be sufficient to establish that he was qualified to perform the essential functions of his position, with or without reasonable accommodation. The facts contained in the Award might be enough to support Defendant's argument on this ground, but the court cannot consider that document for the purpose of Defendant's motion to dismiss the Discrimination Complaint because the Award was only attached to the Amended Petition, and the Discrimination Complaint does not refer to it at all. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).

### ii.    Failure to Accommodate

The substance of Plaintiff's ADA claim turns on his allegation that he "requested a reasonable accommodation by way of verbal requests for light duty" and that his supervisor "flatly refused Plaintiff's request for an accommodation, and failed to engage in a dialog with Plaintiff to explore any reasonable accommodations." (Opp'n at 14; see Discrim. Compl. ¶ 34.) Con Ed's motion to dismiss, somewhat confusingly, claims that "Plaintiff does not allege that he ever sought a reasonable accommodation for his bronchitis, nor does he claim that [Con Ed] denied any request for a reasonable accommodation." (Def. Mem. at 29.) While Plaintiff has

alleged these facts, the court dismisses Plaintiff's failure-to-accommodate claim because he has not alleged them with sufficient particularity.

A plaintiff bringing a failure-to-accommodate claim must plead that his employer affirmatively failed to provide him with a reasonable accommodation for his disability. See McBride, 583 F.3d at 97. In practice, this means that any accommodation that the plaintiff claims is reasonable must have been actually sought and unlawfully denied. See Clarke v. White Plains Hosp., 650 F. App'x 73, 75 (2d Cir. 2016). "Reassignment of a disabled employee to a vacant light-duty position is well established as a reasonable accommodation under the ADA." King v. Town of Wallkill, 302 F. Supp. 2d 279, 291 (S.D.N.Y. 2004). "An employer is not, however, obligated to create a new light-duty position for a disabled employee or make permanent previously temporary light-duty positions." Id. The plaintiff "bears the burden of showing that a reasonable accommodation exist[ed]." Kendricks v. Westhab, Inc., 163 F. Supp. 2d 263, 269 (S.D.N.Y. 2001); see Clarke, 650 F. App'x at 75.

While Plaintiff's pleading alleges that he requested and was unfairly denied a reasonable accommodation for his disability (Discrim. Compl. ¶ 34), it fails to allege when he made his request, that there were light-duty positions available at that time, or that the requested light-duty positions would have constituted a reasonable accommodation. These elements are required in order to survive a motion to dismiss. Because the Discrimination Complaint does not make any specific allegations regarding Defendant's failure to accommodate Plaintiff's chronic bronchitis, the court dismisses Plaintiff's claim.

### iii. Disability Discrimination

Although Plaintiff's disability-discrimination claim is largely based on Defendant's alleged failure to accommodate his disability (see Discrim. Compl. ¶ 34), the court also construes

22

the Discrimination Complaint as raising a substantive ADA discrimination claim. As set forth above, in order to survive a motion to dismiss, a plaintiff alleging disability discrimination must "give plausible support to a minimal inference of discriminatory motivation." Dooley, 636 F. App'x at 20 (quoting Vega, 801 F.3d at 84). Plaintiff attempts to raise such an inference by claiming that Defendant "targeted" him for years on account of his respiratory issues, and ultimately terminated him for reasons that Plaintiff says would not have sufficed to terminate a non-disabled employee. (Discrim. Compl. ¶¶ 25-26, 35; see id. ¶¶ 16-24.)

The allegations in the Discrimination Complaint do not plausibly support to Plaintiff's claim of discrimination. For one, while it seems like Plaintiff tries to assert a disparate-treatment theory of liability, claiming that "other employees with similar attendance records were treated more fairly" (Pl. Opp'n at 14-15; see Discrim. Compl. ¶¶ 25, 35), the Discrimination Complaint does not point to any employees who were not disabled but treated less harshly than Plaintiff despite being similarly situated. See Mandell, 316 F.3d at 379; cf. Salas v. N.Y.C. Dep't of Investigation, 298 F. Supp. 3d 676, 687-88 (S.D.N.Y. 2018). In addition, Plaintiff does not state any facts that could give rise to an inference of discrimination by Defendant. See Giambattista v. Am. Airlines, Inc., 584 F. App'x 23, 25 (2d Cir. 2014) (requiring an ADA complaint to "set forth . . . factual circumstances from which a [disability]-based motivation for [an adverse] action might be inferred" (second alteration in original)). He does not claim that Defendant's employees made any statements about his disability, nor does he give any indication that his disability played a role in Defendant's decision to terminate him. Cf. Salas, 298 F. Supp. 3d at 687. Plaintiff states that his allegations are not "merely . . . conclusory" (Pl. Opp'n at 14), but that is exactly what they are; in order to survive a motion to dismiss, his complaint must do more than state that he has a disability, that Defendant knew about it, and that an adverse action

occurred. Because Plaintiff's complaint does not do more than that, his claim of disability discrimination is dismissed.

### C. Supplemental Jurisdiction

Where a court dismisses all claims over which it has original jurisdiction, it may, in its discretion, decline to exercise supplemental jurisdiction over remaining claims. 42 U.S.C. § 1367(c)(3). "[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006). Because the court has dismissed all federal-law claims asserted by Plaintiff, it declines to exercise supplemental jurisdiction over any potential state-law claims, including those brought under the NYSHRL and NYCHRL.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 14 in No. 17-CV-1710) is

GRANTED.  Plaintiff's Amended Petition (Dkt. 8 in No. 17-CV-1710) is DISMISSED WITH

PREJUDICE.  Plaintiff's Discrimination Complaint (Dkt. 1 in No-17-CV-3099) is DISMISSED

WITHOUT PREJUDICE, with leave to replead within 30 days of the date of this memorandum

and order.

The Clerk of Court is respectfully DIRECTED to enter judgment for Defendant in Case

No. 17-CV-1710 and close the case.  The Clerk of Court is further respectfully DIRECTED, in

the event that Plaintiff does not file an amended complaint within 30 days of the date of this

memorandum and order, to enter judgment for Defendant in Case No. 17-CV-3099 and close the

case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
       July 30, 2018

NICHOLAS G. GARAUFIS
United States District Judge